Laubie, J.
This is an action in quo warranto, brought to test the right of the Salem Water Company to the exercise of the privilege and franchise of eminent domain, and is submitted on a demurrer to the answer of defendant.
The certificate of incorporation is set out in the petition in full, is admitted in the answer to be correct, and seems to have been made in April, 1887, whereby the company .sought *59 to be incorporated under chapter 1, title II., Revised Statutes, under the name of the “ The Salem Water Company,” and for the purpose of “ constructing a water works at Salem, Columbiana County, Ohio, to supply water to said village and its inhabitants.” The answer alleges the organization of the company, the making of a contract with the village, now city of Salem, for the purpose of supplying that village with water, and the inhabitants thereof; that it built and constructed its works, and not being able to obtain water necessary therefor within the limits of the corporation, it purchased certain springs and heads of -water adjacent to the town, and for the purpose of conveying the water thus purchased to its works iu the city, it commenced a proceeding to condemn the right-of-way therefor through the lands of one John C. Whinnery, before the probate court of Columbiana county, and which court, proceeding to hear the preliminary matters, found the existence of the corporation,' that it was entitled to make the appropriation, and the necessity therefor, and empanelled a jury to assess damages; that a trial was had and verdict rendered assessing compensation to Whinnery; that judgment was rendered on the verdict, and that this judgment is in full force and effect, and has not been reversed or set aside. The answer further specially pleads section 2261-1, Revised Statutes, passed since the commencement of this proceeding, as conferring this right upon water companies, to which reference will be made hereafter.
It appears, therefore, that this company was using the power of eminent domain in order to appropriate private property, and outside the limits of the city of Salem, and the question is, whether it possessed that power under the lawrs of the state.
In order to show its right to exercise this privilege counsel for the company refer te paragraph 31, of section 1692, Revised Statutes, which confers upon municipalities the power to provide for supply of -water by constructing water works etc., and to section 2232, paragraph 12, granting to such muni *60 cipalities the right to appropriate lands for such purpose ; and to section 2434, which authorizes municipalities to contract with any individual, or corporation properly organized, to supply such municipalities and their inhabitants with water. All these sections relate to the powers of municipalities, and not to private corporations; but it is claimed that the purpose for which the defendant was organized is a public purpose, and being such, and by thus giving to municipalities the right to contract with such companies for a supply of water, such companies ex necessitate rei, should have, and must have been intended to have the right of eminent domain, precisely the same as the municipality would if it was the owner itself of the works.
The objection to this is that it would be conferring this extraordinary power of eminent domain by implication merely. Corporate power must be expressly given, and no powers are vested in a private corporation save only such as are expressly specified, except where some power is necessary in order to carry out a power expressly conferred. In such cases as this, no such necessity exists, and no such implication can arise. It would be a violent assumption to assume that the legislature intended to confer this extraordinary power upon a water company, simply because it authorized a municipality, to which it had given such power, to contract with such company for a supply of the article it deals in. Hence it is vain to urge that 'this corporation is engaged in a business semi-public in its nature, unless it can be shown that this high power — power to strip a citizen of his property nolens volens — is expressly conferred.
The further claim is made that section 3878, Revised Statutes, confers this right of appropriation- on the defendant.
Section 3878 reads : “ A company organized for the purpose of transporting natural gas, petroleum or water through tubing and pipes, may enter upon any land for the purpose of examining and surveying a line for its tubing and pipes, and may appropriate so much thereof as may be deemed necessary *61 for the laying down of such tubing and piping, and for the erection of tanks and the location of stations'along such line, and the erection of such buildings as may be necessary for the purpose aforesaid; such appropriations shall be made and conducted in accordance with the law providing for compensation to the owners of private property appropriated to the use of corporations ; and such company shall, for the purpose of transporting natural gas, oils, and water, be considered and held to be a common carrier, and subject to all the duties and liabilities of such carriers under the law of this state.”
Now, it is ingeniously argued that this company was organized for the transportation of water, within the meaning of this law, because by no other means than the transportation of water through pipes, could it supply the city of Salem and its inhabitants with water. This is specious, and its fallacy is clear. This section refers to transportation companies, companies organized for the purpose of transporting gas, oil, or water. Statutes are to be construed strictly where some prerogative of the government is claimed; everything must be expressed, and the express powers are to be strictly construed, because they are given in derogation of common right — more particularly as to this extraordinary privilege of eminent domain, the highest the sovereign can exercise. In construing the words, not only are they to be strictly construed as against the corporation, but they are to be taken in their ordinary meaning, unless technical words are used, and evidently in their technical sense. Applying these rules to the section in question, it is clear that water companies are not embraced within its provisions. Transportation signifies carrying articles from one place to another, and therefore a transportation company is a company formed or organized to carry and convey articles from one place to another. And they are well known also to the law. It is well known that the object of transportation companies is to carry or convey property from one place to another, for hire, by means of conveyances, either drawn by beasts, or propelled by steam or what not, and they are desig *62 nated common carriers at common law; and this section of the statute declares that the companies to which it refers shall bo deemed to be common carriers, and “subject to all the duties and liabilities of such carriers under the laws of this state; ” and such companies are organized, therefore, to transport water, carry, convey water from one place to another as common carriers.
The succeeding section, 3880, provides that any such company “may transport and store water for the purpose of furnishing the same to engineers employed in developing for, or in the production and transportation of petroleum,” and it seems as if this legislation was designed as an aid to the development, and production and transportation of petroleum more than anything else. At all events, it is certain the defendant is not a transportation company, organized for the purpose of carrying water within the meaning of this law, under either rule of construction.
Chapter 7, title II, Revised Statutes, entitled “Gas and Water Companies,” defines the powers of water companies, and marks the distinction between companies for transporting water, as common carriers, and legitimate water companies such as we have here. Section 3550 of chapter 7, title II, provides “ A company organized for the purpose of supplying gas for lighting the streets and public and private buildings of a city, village, town, or township, may manufacture, sell, and furnish the gas required therein for such or other purposes, and a company organized for the purpose of supplying the inhabitants of a city, village, town, or township with water may sell and furnish any quantity of water required therein for such other purposes; and such companies may lay conductors for conducting gas or water through the streets, lands, alleys, and squares in such city, village, town, or township, with consent of the municipal authorities of the city, village, or town, or with the consent of the trustees of the township, and under such reasonable regulations as they may prescribe.”
*63 We here find, instead of conferring the power of eminent domain upon water companies organized for the purpose of supplying cities or villages with water, and the inhabitants thereof, this section merely gives them the right to lay pipes for that purpose, upon obtaining permission of the municipality, or of the township trustees to do so.
Section 3551 provides that a municipality, village or township in which a water company is organized, may contract with any such company for a supply of water; and section 3552 provides that gas companies, in any city or village, may extend their pipes outside the corporation limits; but the right-of-way must be first obtained from the authorities or persons having control of the places to be affected by such extension; but this right is not extended to' water companies. These provisions are entirely inconsistent with, and repel the idea that water companies have the right to take land from the owner by appropriation, against his consent.
Another point relied on by the defendant is that the judgment, of the probate court in the appropriation proceeding heretofore referred to, is a bar to this proceeding in quo warranto, because section 6420, Revised Statutes, provides that the “ probate judge shall hear and determine the questions of the existence of the corporation, its right to make the appropriation and the necessity therefor.” Indeed it is claimed, not only that the judgment of the probate court bars further inquiry, but also that it is more than doubtful whether quo warranto will lie to test the right of a corporation to the exercise of this power.
This proceeding is brought under the fourth subdivision of section 6761, Revised Statutes, where it is provided that a civil action may be brought in the name of the state, against a corporation, when it has misused a franchise, privilege or right conferred upon it by law, or exercised a franchise, privilege or right not so conferred; and by virtue of the constitution of the state, which confers original jurisdictiion upon this court, *64 this is an appropriate tribunal to determine such questions. To sustain the claim herein made for the defendant, counsel rely on the case of The State of Ohio ex rel. Grisell v. Marlow, 15 Ohio St. 134. That'was a proceeding in quo warranto to test the right of Marlow to the office of sheriff, and the court held that quo warranto was not a proper proceeding for such purpose. In passing on this question the court say (pages 133, 134, 135) : “The constitution expressly confers original jurisdiction in quo warranto upon the supreme court and the district courts of the state, and looking to these provisions alone, it might be well claimed that such plenary jurisdiction was intended as could be exercised in that behalf at common law; though it could hardly be claimed that the mode of exercising su'ch jurisdiction could not be prescribed and regulated by the legislature. But it is clear that the power thus conferred may be modified or limited by other provisions of the same instrument, equally express. In such case we must consider the various provisions, in pari materia, and give such construction if possible, to each, that all may have effect. The twenty-first section of the second article of the constitution imperatively requires that the general assembly shall determine by law before what authority, and in what manner, the trial of contested elections shall be conducted. In the fulfillment of the solemn obligation thus imposed, we find upon the statute book, in the election laws of the state, jurisdiction specially conferred upon various tribunals to hoar and determine contests in regard to the election of The different public officers, and the mode prescribed in which such contests shall be conducted. The courts of common pleas in the several counties are specially designated as to the authority before which elections of sheriffs and the various other county officers shall be contested, and by which such contests shall be heard and determined.” ¡‡: >[i ^ ^ ^ X
“This legislation being not merely permitted, but enjoined by the qonstitution, has, in effect, the same high sanction as *65 though it formed a part of that instrument. Jurisdiction being thus specially conferred upon other tribunals, and the mode of its exercise prescribed, it can not be inferred that it was intended by the constitution to be differently exercised by a proceeding in quo warranto, as at common law, or by the supreme court and district courts, under a more general grant of jurisdiction in quo warranto
“ Public offices in this state do not exist in virtue of the common law. They arc the creatures of the constitution and the statute. The right to an elective office, such as that of sheriff, can only be acquired by an election, pursuant to the provisions of the statute. And it is a settled rule that where a new right, or the means of acquiring it, is conferred, and an adequate remedy for its invasion is given by the same statute, parties injured are confined to the statutory redress. * * * “ The rule is equally applicable upon principle, that where the statute which confers the means of acquiring a right, prescribes an adequate special mode of determining by a judicial investigation the fact upon which the-right depends, that mode must be exclusive.”
I quote at large from the decision to make it apparent from its face that it in no manner touches the case before us. There is no provision of the constitution which directs the legislature to provide and determine before what authority, and in what mode, the right of a corporation to the exercise of a franchise, privilege or right shall be determined; but it confers upon the supreme court of the state, and the circuit courts, original jurisdiction in quo warranto, and the power thus conferred, is in no way modified or limited by any other provision of the instrument, and therefore it is that those courts are expressly-authorized to exercise such plenary jurisdiction ” as could be exercised in that behalf at common law;” nor has the legislature attempted to provide any other mode or means, or any other tribunal, either in the statute authorizing the organization of such corporations, or’jin any other, whereby, or wherein, sucifiquestions might be directly tested.^ Indeed,’thejlegislature *66 could not strip those courts of the jurisdiction thus conferred, without express constitutional authority, such as is given in regard to contests of elections.
In Dalton v. The State ex rel., 43 Ohio St. 685, in reviewing the Marlow case, Judge Johnson, in'his dissenting"1 opinion, with good show of reason, makes the distinction that “this provision for a contest was to determine the right and title to an office, and not the right and title to a certificate.” And so this able judge concluded that even this remedy thus provided for by the constitution itself was exclusive only where the title to an office was directly in contest. The majority of the court did not controvert this conclusion, but held that the matters in dispute could be determined only in a contest in the proper tribunal.
So jealously guarded is this right of thejstate to a quo warranto, that in the case of The State ex rel. Attorney-General v. The Cincinnati Gas Light and Coke Co., 18 Ohio St. 262, it was held that a judgment in favor of the defendant, rendered in a proceeding in quo warranto brought by the prosecuting attorney of a county, in a district court, was not final, and was not a bar to an action to determine the very same question upon the relation of the attorney-general, against^the same defendant. In the same case, the defendant “also set up that it could not obey the ordinance in question fixing the price of gas, as directed by statute, because in an action in equity, brought against it and the city of Cincinnati by one Sophia Deane in the Circuit Court of the United States,Ht 'had?been enjoined from obeying this ordinance, and the city^of Cincinnati from enforcing it, and that such injunction was still in full force; but the court held that such decree was no bar|to the proceeding upon the part of the attorney-general, and say : “An ordinance of the city council, duly passed pursuant to the power given as above, and fixing the maximum price to be charged by defendant for gas, for the period of one year from its date, is obligatory upon, the defendant; and disobedience of this requirement can not be justified by the fact that by a decree of *67 the Circuit Court of the United States within and for the southern district of Ohio, in a case in which one S. D. was-complainant, and the defendant and the city of Cincinnati were defendants, the present defendant was and still is enjoined from obeying such ordinance. The state was no party to that suit, and her right to assert the validity of the ordinance in a prosecution like the present, is unaffected by the decree rendered therein.” *
So here, in,regard to the case of the Salem Water Company against John C. Whinnery, in the probate court, the state was not a party, nor was that proceeding one to test the question, under any provision of the. constitution, or any law specially enacted for such purpose, whether the state had conferred upon the defendant the power of eminent domain. It is true in such proceeding the probate court is required to pass upon the question between the parties, but under what principle is that a bar to the State? A decision thus rendered between two private parties, can not bind the State, where there is no statute directing that such proceeding should be the mode to ascertain whether the State had conferred upon a corporation such right, although as essential to the exercise of jurisdiction in appropriation proceedings, the probate court is required to pass upon the question. It may be conclusive between the parties until reversed, but that can not affect the right of the State to determine, by quo warranto, whether one of its creatures is exercising, without right, this extraordinary power. There is nothing in the Marlow' case to justify a contrary holding.
The only remaining question to consider in this case is as to the effect of section 2261-1, Revised Statutes, passed April 15, 1889, which reads as follows : “ 2261-1. Be it enacted by the General Assembly of the State of Ohio that in any county having a population of 48,602 by the last federal census, or which may have such population at a subsequent census, any corporation heretofore organized to supply water to any municipal corporation and its inhabitants, and actually (engaged) in such supplying, shall have the same right to appropriate, *68 enter upon, and hold real estate for its water works as such municipal corporation would have if it was the owner of said water works; and may proceed in its own name, under the provisions of chapter 3, division 7, title 12, of the Revised. Statutes of Ohio, to make such appropriation the same as such municipal corporation might proceed if it owned said water works.” It was conceded at the hearing that this act was procured tobe passed by this defendant; that Columbiana county was the only county at the last federal census of 1880, that had just 48,602 inhabitants, and that the defendant was the only water company in that county which was organized to supply a municipal corporation and its inhabitants with water, or that was engaged in supplying a municipal corporation with water. Now, while in the argument counsel for the defendant placed no stress upon this act, hardly denying its unconstitutionality, yet it is set out in full and relied upon in the answer, and we are asked to pass upon the question. The constitution provides that the legislature shall not confer corporate power by special legislation, and the query is, whether this act confers, or attempts to confer, corporate power by special legisla-1 tion. An act may be special which is geueral in its form, and its form therefore cannot determine the question, but regard must be had to the effect of the act. If the effect of the act is special merely, in this instance to confer corporate power upon a special corporation, it is an attempt to confer corporate power by a special act. "What then is the effect of this act? It applies only to Columbiana county, that being the only county in the state that had the population named at the last federal census prior to the passage of the act, and to such corporations, if there were more than one, solely in that county, and not to corporations of a similar character in other counties, except in such counties where such corporations may have been in existence when the act took effect, and which counties, according to some subsequent census thereafter, may have just that population. It is not sufficient that under any subsequent census some other county in the state shall have just that population, *69 but in addition thereto, the corporation itself must have been in existence at the time the act was passed, and not only in existence, but, it seems, actually then engaged in supplying municipal corporation with water. The probabilities that it could apply to any other corporation than the Saleiii Water Company, or other similar companies, if there were any other in the county of Columbiana that were supplying municipalities in that county with water, or that it can ever apply to any other county, are infinitesimal. From the words of the act alone, that it selected a very small number out of a class of corporations, with the design to confer upon them corporate powers which they did not then possess, and which was not possessed by, or intended to be conferred upon the great body of the class, is certainly clear and cannot be disputed. Indeed, the leading counsel of defendant, in the argument, said that he advised against this whole matter; that this plea was put into the answer against his judgment, and we think this law avails the defendant nothing.; and the result is, the demurrer must be sustained, and judgment of ouster entered.
A. W. Jones, Jared Huxley and Sheldon Farks, for plaintiff.
Ambler & Son, for defendant.